**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NORTH DAKOTA**
**NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| Alliance Pipeline L.P., | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING PLAINTIFF'S** |
| | ) | **MOTIONS FOR PARTIAL SUMMARY** |
| vs. | ) | **JUDGMENT AND IMMEDIATE** |
| | ) | **USE AND POSSESSION** |
| | ) | |
| 9.654 Acres of Land, more or less, | ) | Civil No. 4:12-cv-145 |
| in the NE/4 of Section 33 Township 163 | ) | |
| North, Range 84 West, Renville County, | ) | |
| North Dakota et al., | ) | |
| | ) | |
| Defendants. | ) | |

_____

Before the Court are Alliance Pipeline L.P.'s motions for (1) summary judgment, and (2) immediate use and possession filed on October 19, 2012. See Docket No. 3. Alliance Pipeline seeks partial summary judgment as to its right to condemn parcels of property named in this action to construct, operate, and maintain a natural gas pipeline pursuant to the Natural Gas Act, 15 U.S.C. § 717 *et seq*. Alliance Pipeline also seeks immediate use and possession of the property sought to be condemned in order to construct the natural gas pipeline. Defendant Gail Clifford Hutton, Trustee of the Gail Hutton Family Trust ("Hutton"), filed a responsive brief in opposition to the motions on November 21, 2012. See Docket No. 17. Alliance Pipeline filed a reply brief on December 5, 2012. See Docket No. 18. For the reasons set forth below, the Court (1) grants the motion for partial summary judgment; and (2) grants the motion for immediate use and possession.

**I.    BACKGROUND**

This is a condemnation action brought by the plaintiff, Alliance Pipeline L.P. Alliance Pipeline is a limited partnership organized and in good standing under the laws of the State of Delaware, and authorized to do business in the State of North Dakota as a foreign limited partnership. See Docket No. 5, p. 1. On September 20, 2012, the Federal Energy Regulatory Commission ("FERC") issued an Order granting Alliance Pipeline a certificate of public convenience and necessity, specifically authorizing the construction, operation, and maintenance of an approximately 79-mile-long, 12-inch diameter, underground natural gas pipeline and related facilities and appurtenances known as the Tioga Lateral Project ("Project"). See Docket No. 1-2. The Project will provide infrastructure to transport 106 million cubic feet (mmcf) of natural gas and natural gas liquids per day from an existing processing plant operated by Hess Corporation near Tioga, North Dakota, to a location near Sherwood, North Dakota, where it will connect to Alliance Pipeline's existing mainline pipeline. See Docket No. 5, pp. 2-3. Alliance Pipeline's mainline pipeline is a 36-inch diameter pipeline that transports natural gas and natural gas liquids from production sources in Canada and North Dakota to delivery points in the Midwestern United States, including Alliance Pipeline's primary delivery point near Joliet, Illinois, located 50 miles southwest of Chicago. See Docket No. 5, p. 3.

Alliance Pipeline has engaged in negotiations with the affected landowners along the route of the Tioga Lateral Project to acquire the property interests necessary to construct and operate the pipeline. See Docket No. 5, p. 3. The company has reached agreements with most of the affected property owners to acquire the necessary property interests. However, Alliance Pipeline has been unable to secure all of the property needed through negotiations. The company initiated this action

to condemn (1) easements to construct and operate the natural gas pipeline, and (2) a fee simple parcel for the construction of the Sherwood Regulating Station. A description of the property sought in this action was filed with the complaint. See Docket Nos. 1-1 and 1-3.

In the order issuing the certificate of public convenience and necessity, the FERC determined that the Tioga Lateral Project will fill a critical need by facilitating the transportation of liquids-rich gas produced from the Bakken shale formation in western North Dakota and eastern Montana, to major markets in the Chicago area. See Docket No. 1-2, p. 5. The Project will provide downstream consumers with increased access to clean burning energy and reduce "flaring"—the burning of natural gas produced as a by-product of oil production at the well sites. See Docket No. 5, pp. 4-5. In addition, the Project will provide the unique ability to transport the Bakken formation's liquids-rich natural gas to market, without the need for significant additional above-ground infrastructure in North Dakota, including processing plants. Generally, natural gas liquids—products like propane, butane, and ethane—are separated from the natural gas, which is primarily methane, at processing plants near the source of production and shipped separately. The shortage of processing plants, and the high cost of constructing additional plants, has limited the ability of producers to ship gas out of North Dakota, and contributed to the prevalence of flaring. According to the North Dakota Industrial Commission, nearly one-third of the natural gas produced in North Dakota is flared. The Tioga Lateral Project and Alliance Pipeline's mainline pipeline have the ability to transport the liquids entraining in the gas stream to an existing processing plant near Chicago, where the gas and liquids can be effectively separated and delivered to market. See Docket No. 5, pp. 3-5.

Producers and shippers of natural gas and natural gas liquids in the Williston Basin have expressed support for the Tioga Lateral Project. See Docket No. 5, p. 4. Of the total shipping

capacity of 106 mmcf per day, Alliance Pipeline has obtained a "firm commitment" from Hess Corporation to ship approximately 61.5 mmcf per day for ten years. See Docket Nos. 5, p. 4; 5-2. EOG Resources, Inc., and its subsidiary, Pecan Pipeline (North Dakota), Inc., have also publicly declared support for the Project. See Docket No. 5-2, p. 5. The Project will enable these producers and shippers to increase their shipping capacity, potentially reducing the need for flaring, and providing a method for shipping the Williston Basin's liquids-rich gas to market without constructing additional processing plants. See Docket No. 5, pp. 4-5.

Based upon an expected July 1, 2013, in-service date, Alliance Pipeline and its contractors have made significant investments in preparation for construction of the Tioga Lateral Project, including commitments for the purchase of pipe for the Project and other items requiring long lead-times. Similarly, Hess Corporation and other potential shippers have developed their drilling and marketing plans in reliance on the Project. See Docket No. 5, p. 6. Delays in completion of the Project would negatively affect those plans and place the significant investments made by Alliance Pipeline and its contractors and shippers at risk.

Delays in the completion of the Project could also negatively impact post-construction restoration of the affected properties, and increase the cost of the Tioga Lateral Project and the time required to complete construction. See Docket No. 5, pp. 7-8. Construction of the Project will be completed in several phases. The first phase will involve stripping and stockpiling the topsoil from the trench area and, depending on the nature of the property, additional areas within the easements. Alliance has committed to completing topsoil removal before the ground freezes, but any delay in acquiring easements could make that impossible. See Docket No. 5, p. 7. If Alliance Pipeline is unable to strip and stockpile all the topsoil before it freezes, it will add significant cost to the

4

construction process and make it more difficult to restore the soil to its preconstruction condition in a timely fashion.

Pipeline construction is a continuous, mass production procedure, similar to a moving assembly line. See Docket No. 5, p. 7. Within each construction crew are smaller specialized crews, such as the staking crew, grading crew, ditching crew, welding crew, and so forth. To maximize the efficiency of the construction process, these specialized crews need to be able to follow each other down the length of the easements, performing each construction operation in a sequential manner. For this reason, access to the entire route of the Project is required for the construction process to proceed as efficiently and expeditiously as possible. If Alliance Pipeline does not have access to the entire route of the Project, it must either have crews "stand-by" (i.e., stop work and wait) until the necessary easement can be acquired, or "move-around" the parcel where Alliance Pipeline has not yet acquired the necessary easement. See Docket No. 5, pp. 7-8. Either approach would significantly increase the costs of construction and would significantly delay completion of the Project.

Alliance Pipeline's contractor for the Tioga Lateral Project costs approximately $500,000 per day. See Docket No. 5, p. 6. Alliance Pipeline has also contracted with a vendor near Tioga to provide housing for the construction crews for an additional $280,000 per week, or $40,000 per day. Accordingly, each day that the construction crews must stand-by or move equipment around a particular tract of land, as much as $540,000 will be added to the total cost of the Project.

In order to complete construction in a timely and efficient manner, Alliance Pipeline contends it needs to have access to the entire route of the Tioga Lateral Project as soon as possible and before the ground freezes. See Docket No. 5, p. 8. The company contends that delays in

construction and completion of the Project caused by the lack of access will not only significantly and irreparably harm Alliance Pipeline, but will also harm natural gas producers, project suppliers, consumers of the natural gas transported, and other landowners along the Project route. According to declarations that accompany Alliance Pipeline's motions, the impact to the lands in question will be no greater if immediate access is granted for purposes of constructing the Project, and the impacts of construction may be less, particularly considering that immediate access should avoid the need for stripping topsoil after freeze up. See Docket No. 5.

On October 19, 2012, Alliance Pipeline filed motions for (1) partial summary judgment as to its right to condemn easements along the route of the Tioga Lateral Project pursuant to the Natural Gas Act, 15 U.S.C. § 717 *et seq.*; and (2) immediate use and possession of the condemned property to construct and operate the natural gas pipeline. See Docket No. 3. Hutton filed a responsive brief in opposition to the motions on November 21, 2012. See Docket No. 17. Alliance Pipeline filed a reply brief on December 5, 2012. See Docket No. 18.

## II.     LEGAL DISCUSSION

### A.     PARTIAL SUMMARY JUDGMENT

Alliance Pipeline seeks partial summary judgment as to its right to condemn property and easements to construct and operate the Tioga Lateral Pipeline pursuant to the Natural Gas Act, 15 U.S.C. § 717 *et seq.*, and the certificate of public convenience and necessity. The property interests sought by Alliance Pipeline include the following:

    1)    a fee simple interest in Outlot 1, a 7.504 acre parcel for the Sherwood Regulating Station;

2) a temporary easement for a staging area, a 1.857 acre parcel adjacent to the north and west sides of Outlot 1; and

3) a 50 foot-wide permanent easement, and a 25 foot-wide temporary easement along the route of the Tioga Lateral Project to construct and operate the pipeline.

See Docket Nos. 1; 1-1; and 19.

As to the second and third category of property sought by Alliance Pipeline, Hutton concedes that Alliance Pipeline has authority to condemn the permanent and temporary easements to construct and operate the natural gas pipeline. The Court grants Alliance Pipeline's motion for partial summary judgment as to a temporary easement in 1.857 acres for a staging area; and a 50 foot-wide permanent easement, and a 25 foot-wide temporary easement to construct and operate the pipeline as described in Exhibit A of the condemnation complaint (Docket No. 1-1).

However, Hutton contends that Alliance Pipeline should not be permitted to acquire a fee simple interest in Outlot 1 or, in the alternative, if Alliance Pipeline has authority to condemn a fee simple interest, it is only entitled to 2.9 acres, rather than 7.504 acres.

### 1) **AUTHORITY TO CONDEMN IN FEE SIMPLE**

A natural gas company may condemn private land in order to construct and operate a natural gas pipeline under the Natural Gas Act, 15 U.S.C. § 717 *et seq.* The provision authorizing eminent domain, 15 U.S.C. § 717f(h), provides as follows:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such

> property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated: *Provided,* That the United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000.

15 U.S.C. § 717f(h) (emphasis in original). 15 U.S.C. § 717f(h) permits a natural gas company to condemn property if: (1) the company is a "holder of a certificate of public convenience and necessity"; and (2) the company is unable to agree with property owners as to "the compensation to be paid for" the property interest. A natural gas company may condemn the necessary rights-of-way to construct and operate a pipeline, and may also acquire property interests "in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines[.]" Id. Alliance Pipeline contends it has authority to condemn a fee simple interest in Outlot 1, to construct a pressure regulation station identified as the Sherwood Regulating Station.

Alliance Pipeline holds a certificate of public convenience and necessity issued by the FERC, which was filed with the complaint. See Docket No. 1-2. The certificate authorizes the construction, operation, and maintenance of the Tioga Lateral Project. See Docket No. 1-2, pp. 13-14. FERC's order issuing the certificate states in relevant part as follows:

(A)  A certificate of public convenience and necessity is issued authorizing Alliance to construct and operate the Tioga Lateral Project facilities, as described and conditioned herein, and as more fully described in the application.

See Docket No. 1-2, p. 13. As part of the application to the FERC, Alliance Pipeline submitted a Resource Report 1 General Project Description ("General Project Description") which describes the "[c]onstruction and operation of the pressure regulating station and pig receiver at MP 79.3."

8

Alliance Pipeline has identified the pressure regulation station and pig receiver as the Sherwood Regulation Station.  See Docket Nos. 17-1, p. 14; and 19.  As the FERC issued an order that incorporates by reference the property descriptions found in the General Project Description, the Court finds that the FERC's order approved the construction of the Sherwood Regulation Station and further approved condemning the necessary property interest to construct the facility, including a fee simple interest.

Hutton acknowledges that "it appears Alliance may have authority to acquire a fee simple interest in land for the location" of the Sherwood Regulation Station, but contends a long-term lease would be more appropriate.  See Docket No. 17, pp. 2-3.  Hutton cites no authority that would require Alliance Pipeline to enter into a long-term lease, rather than pursue the right to exercise eminent domain to condemn a fee simple interest in the property.  Courts have approved the condemnation of fee simple interests to construct appurtenant above-ground facilities.  See e.g., Guardian Pipeline, L.L.C. v. 295.49 Acres of Land, Nos. 08-C-0028, 08-C-54, 08-C-29, 08-C-30, 2008 WL 1751358, at *3, n.2 (E.D. Wis. Apr. 11, 2008) (in an order confirming the natural gas pipeline's authority to condemn, the complaint sought easements and "[i]n addition, Guardian must acquire fee simple interests in three parcels in order to construct two meter stations and one 'tap' station.").  The Court rejects Hutton's objection.

Hutton also contends that Alliance Pipeline failed to adequately declare its intention to acquire a fee simple interest in Outlot 1.  The Court disagrees.  A plaintiff in a condemnation action must adequately describe "the interest to be taken" in the complaint and the notice of condemnation.  Fed.R.Civ.P. 71.1(c)(2)(D) and 71.1(d)(2)(A)(ii).  Hutton acknowledges that she received the complaint, the exhibits attached to the complaint, and the notice of condemnation.  See Docket No.

17, pp. 2-3. The complaint and the notice of condemnation expressly reference "Exhibit A" of the complaint. See Docket No. 1, p. 2 ("The Subject Tracts, Easements and Owners, together with the nature of the interest of each Owner as nearly as can be ascertained, are set forth in **Exhibit A**, attached hereto and made a part hereof as though fully set forth herein.") (emphasis in original); Docket No. 2, p. 1 ("The subject tracts and the easements to be taken are set forth in Exhibit A to the Condemnation Complaint, attached hereto and incorporated herein. You have a claim or interest in one or more of the subject tracts."). Exhibit A provides a detailed description of the land and interest sought to be condemned by Alliance Pipeline, including in relevant part as follows:

**Description of the Interest to be Acquired:**

**Outlot 1 (To be Acquired in Fee)**

See Docket No. 1-1, p. 1 (emphasis in original). The record before the Court clearly refutes Hutton's claim that she did not receive adequate notice of Alliance Pipeline's intent to acquire a fee simple interest in Outlot 1. The Court finds that Alliance Pipeline has authority to condemn a fee simple interest for the Sherwood Regulation Station.[1]

### 2) **PROPERTY AUTHORIZED TO BE CONDEMNED**

Hutton contends that if Alliance Pipeline has authority to condemn a fee simple interest, that the interest should be limited to 2.9 acres, rather than 7.504 acres described in Exhibit A of the

---

[1] The issue addressed by the Court in this section is whether Hutton received notice of Alliance Pipeline's intention to acquire a fee simple interest. The Court finds the record demonstrates that Hutton received notice that Alliance Pipeline intended to acquire a fee simple interest. However, Alliance Pipeline's description of the interest sought to be condemned is not without defects. Hutton notes, and Alliance Pipeline concedes, that the description of the fee simple interest sought in Outlot 1 is roughly three (3) acres more than what FERC approved for the construction of the Sherwood Regulation Station as currently described in Exhibit A of the complaint. Compare Docket Nos. 1-1, p. 1 (describing Outlot 1 as 7.504 acres of land); with 17-1, p. 14 (General Project Description providing that the pressure regulation station will affect "about 4.2 acres."). The Court will address this defect below.

complaint. As described above, Exhibit A provides that Alliance Pipeline seeks a fee simple interest in 7.504 acres in Outlot 1, for the Sherwood Regulation Station. See Docket No. 1-1, p. 1. Alliance Pipeline now concedes that FERC has not approved a fee simple interest in the 7.504 acres of Outlot 1. See Docket No. 19, pp. 2-3. The General Project Description describes the property necessary for the Sherwood Regulation Station provides as follows:

> **Pressure Regulating Station and Pig Receiver**
>
> Construction and operation of the pressure regulating station and pig receiver at MP 79.3 will affect about 4.2 acres. This includes 2.9 acres which will be fenced and maintained for operation of the facilities and 1.3 acres of temporary workspace which will be restored to preconstruction condition following construction (with the exception of the permanent access road indicated above). Topsoil removed from within the fenced facility during construction will be spread over the temporary workspace during restoration of this area. A plot plan for the pressure regulating station is provided in Appendix 1C.

See Docket No. 17-1, p. 14. The General Project Description provides for only 4.2 acres for the pressure regulation station (the Sherwood Regulation Station) including 2.9 acres "for the operation of the facilities" and 1.3 acres for temporary workspace. Alliance Pipeline does not have authority to expand its plans for the Tioga Lateral Project. The FERC's order provides that "Alliance's right of eminent domain . . . does not authorize it to increase the size of its natural gas pipelines or aboveground facilities to accommodate future needs[.]" See Docket No. 1-2, p. 16. The Court finds that FERC's order approved only 4.2 acres for the Sherwood Regulation Station—2.9 acres in fee simple for the regulation station and 1.3 acres for temporary workspace—rather than a fee simple interest in 7.504 acres as described in Exhibit A of the condemnation complaint.

Nonetheless, Alliance Pipeline contends that FERC granted it authority to condemn all of the property described as Outlot 1 as follows:

1) 4.2 acres in Outlot 1 for the Sherwood Regulation Station, a fee simple interest in 2.9 acres and a temporary workspace easement in 1.3 acres; and

2) 3.304 acres temporary easement for a staging area in the remaining portion of Outlot 1.

The Court agrees. As discussed above, the FERC approved the General Project Description which authorizes a fee simple interest in 2.9 acres and a temporary easement for workspace to construct the Sherwood Regulation Station. In addition, the General Project Description provides that up to 9.9 acres may be used for a temporary staging area. See Docket No. 17-1, p. 13 (noting that the "construction contractor will require four staging areas (at MPs 0.0, 31.0, 49.3, and 79.3) for office trailers, parking, vehicle maintenance, and storage of pipe and equipment during construction of the project."); Docket No. 17-1, p. 12 (showing Table 1.1.3-1 which notes that "Staging Area 4, MP 79.3" in Renville County will affect 9.9 acres of land during construction). Accordingly, FERC's order authorized Alliance Pipeline to condemn all of Outlot 1, including 4.2 acres for the Sherwood Regulation Station and 3.304 acres for a temporary staging area.

The Court has carefully reviewed the entire record, the parties' briefs, and the relevant case law. The Court finds that Alliance Pipeline has clearly demonstrated that it has authority to exercise the right of eminent domain pursuant to the Natural Gas Act, 15 U.S.C. § 717f(h), and the certificate of public convenience and necessity authorizing the Tioga Lateral Project. The Court grants Alliance Pipeline's partial motion for summary judgment, and issues an order of condemnation for the following properties:

1) 4.2 acres in Outlot 1 for the Sherwood Regulation Station, a fee simple interest in 2.9 acres and a temporary workspace easement in 1.3 acres;

2) 3.304 acres temporary easement for a staging area in the remaining portion of Outlot 1;

3) a temporary easement for a staging area in 1.857 acres, more or less, adjacent to Outlot 1; and

4) a 50 foot-wide permanent easement, and a 25 foot-wide temporary easement to construct and operate the pipeline.

See Docket Nos. 1-1; and 19. The Court orders Alliance Pipeline to file and serve an amended complaint which accurately reflects the interest to be condemned consistent with FERC's order issued on September 20, 2012.

**B.   IMMEDIATE USE AND POSSESSION**

Alliance Pipeline also moves for immediate use and possession of the condemned property along the route of the Tioga Lateral Project. The motion is made on the grounds that Alliance Pipeline will suffer irreparable harm if it does not acquire immediate access to the entire route of the pipeline. Alliance Pipeline contends the Court has inherent equitable power to grant the motion.

This Court has granted immediate use and possession of property in similar cases based on its inherent equitable powers. N. Border Pipeline Co. v. 127.79 Acres of Land, 520 F. Supp. 170 (D.N.D. 1981); Williston Basin Interstate Pipeline Co. v. Easement and Right-of-Way Across .152 Acres of Land, No. A1-03-66, 2003 WL 21524816 (D.N.D. June 3, 2003). It is well-established that district courts in a number of jurisdictions have similarly granted immediate possession to natural gas companies that have demonstrated the right to condemn property under the Natural Gas Act, as Alliance Pipeline has done in this case. See Nw. Pipeline Corp. v. The 20' by 1,430' Pipeline Right of Way, 197 F. Supp. 2d 1241, 1245 (E.D. Wash. 2002) ("where there is no dispute about the validity of [the gas company's] actual right to the easement," denying authority to grant immediate possession "would produce an absurd result"); Guardian Pipeline, L.L.C. v. 950.80 Acres of Land,

13

210 F. Supp. 2d 976, 979 (N.D. Ill. 2002) (immediate possession proper when condemnation order has been entered and preliminary injunction standards have been satisfied); N. Border Pipeline Co. v. 64.111 Acres of Land, 125 F. Supp. 2d 299, 301 (N.D. Ill. 2000) (same); Tenn. Gas Pipeline Co. v. New England Power, C.T.L., Inc., 6 F. Supp. 2d 102, 104 (D.Mass. 1998) (holding district court has inherent equitable power to grant immediate entry and possession where such relief is essential to the pipeline construction schedule); USG Pipeline Co. v. 1.74 Acres, 1 F. Supp. 2d 816, 825–26 (E.D. Tenn. 1998) (granting immediate possession where pipeline company would suffer substantial financial detriment if construction were delayed); Kern River Gas Transmission Co. v. Clark Cnty, 757 F. Supp. 1110, 1117 (D.Nev. 1990) (granting motion for immediate occupancy); Humphries v. Williams Natural Gas Co., 48 F. Supp. 2d 1276, 1280 (D.Kan. 1999) ("[I]t is apparently well settled 'that the district court does have the equitable power to grant immediate entry and possession [under the NGA].'"); Rivers Electric Co. v. 4.6 Acres of Land, 731 F. Supp. 83, 87 (N.D. N.Y. 1990) (granting immediate possession under a statute similar to the NGA).

Hutton does not object to Alliance Pipeline's motion for immediate use and possession of the permanent and temporary easements described above, as long as the company posts sufficient bond and restores the right-of-way to pre-construction conditions. See Docket No. 17, p. 4. Alliance Pipeline is committed to deposit the sum of $3,000 per acre of land to be condemned with the Clerk as a condition of immediate use and possession, and FERC's order issuing the certificate of public convenience and necessity requires Alliance Pipeline to restore the right-of-way to pre-construction condition.

However, "Hutton objects to Alliance having immediate use and possession of Outlot 1 to construct a pressure regulating station." See Docket No. 17, p. 5. Hutton contends that "Alliance

14

has not demonstrated why a fee simple interest in Outlot 1 is required, and the amount of acres it requests to take for the construction of a pressure regulation station is disputed." See Docket No. 17, p. 5. As outlined above, the Court determined that the FERC's order authorizes Alliance Pipeline to condemn a fee simple interest in 2.9 acres, more or less, of Outlot 1. The Court rejects Hutton's objection.

In the order issuing the certificate of public convenience and necessity, FERC determined that the Tioga Lateral Project will fill a critical need by facilitating the transportation of liquids-rich gas produced from the Bakken shale formation in western North Dakota and eastern Montana, to major markets in the Chicago area. See Docket No. 1-2, p. 5. As outlined above, the Project will provide downstream consumers with increased access to clean burning energy. See Docket No. 5, pp. 4-5. The Project will provide significant benefits to producers and shippers of natural gas from the Bakken by increasing shipping capacity, potentially reducing the need for flaring, and providing a method for shipping the Williston Basin's liquids-rich gas to a market without constructing additional processing plants. See Docket No. 5, pp. 4-5. Delays in the completion of the Project could negatively impact post-construction restoration of the affected properties, and increase the cost and the time required to complete construction. See Docket No. 5, pp. 7-8. Alliance has committed to completing topsoil removal before the ground freezes. See Docket No. 5, p. 7. However, if Alliance Pipeline is unable to strip and stockpile all the topsoil before it freezes, it will add costs to the construction process and make it more difficult to restore the soil to its preconstruction condition in a timely fashion.

The record before the Court reveals that access to the entire route of the Project is required for the construction process to proceed in an efficient and expeditious manner. If Alliance Pipeline

does not have access to the entire route of the Project, it must either have crews "stand-by" until the necessary easement can be acquired, or "move-around" the parcel where Alliance Pipeline has not yet acquired an easement. See Docket No. 5, pp. 7-8. Either approach would significantly increase costs and delay completion of the Project. Each day that the construction crews must stand-by or move equipment around a particular tract of land will add as much as $540,000 to the total cost of the Project.

The Court has carefully considered the evidence submitted by the parties. As determined above, Alliance Pipeline has established that it has a right to condemn the property in question pursuant to the Natural Gas Act, 15 U.S.C. § 717f(h). The record before the Court reveals that Alliance Pipeline has met the equitable considerations needed to warrant immediate use and possession of the land at issue. See Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109, 114 (8th Cir. 1981) (outlining four (4) factors to be considered when determining whether a party is entitled to injunctive relief). The Court expressly finds that there is urgency and a need on behalf of Alliance Pipeline for the immediate possession. Alliance Pipeline has demonstrated that it would suffer immediate and irreparable harm if construction crews do not have immediate access to the entire route of the Tioga Lateral Project. Hutton would suffer no additional harm if Alliance Pipeline took immediate possession of the property in question as the company has clearly proven it has the right to condemn the property in question. In addition, Alliance Pipeline has committed to deposit the sum of $3,000 per acre of land to be condemned with the Clerk as a condition of immediate use and possession. The Court further finds that it would be in the best interests of the public to grant immediate possession of the properties to Alliance Pipeline and that the public interest will be prejudiced by any delay in granting such possession.

The Court concludes that Alliance Pipeline has clearly demonstrated that the necessary equitable considerations weigh in favor of granting immediate use and possession of the land in question. As such, the Court issues the following **ORDER**:

(1) That the plaintiff, Alliance Pipeline L.P., shall have immediate possession of the specific tracts of land identified in this Order and consistent with FERC's order issued on September 20, 2012, for the purpose of constructing a natural gas pipeline transportation system and pressure regulation facility, i.e., the Tioga Lateral Project and the Sherwood Regulation Station;

>(A) filing and serving an amended complaint which accurately reflects the interests to be condemned consistent with FERC's order issued on September 20, 2012; and

>(B) depositing with the Clerk of the District Court the sum of $3,000 per acre of land, in cash or surety bond as a condition of immediate use and possession; and

(3) That Alliance Pipeline L.P., shall to the extent practicable restore the property affected by the construction of the pipeline and above-ground facilities to pre-construction condition.

### III. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Alliance Pipeline's motion for partial summary judgment (Docket No. 3); and **GRANTS** Alliance Pipeline's motion for immediate use and possession (Docket No. 3).

**IT IS SO ORDERED**,

Dated this 18th day of December, 2012.

                                      /s/ Daniel L. Hovland
                                      Daniel L. Hovland, District Judge
                                      United States District Court